IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WALLACE E. HARDEN, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civ. Action No. 04-1392-JJF |
| | : |
| M. KNIGHT and C. KLINE, | : |
| | : |
| Defendants. | : |

Wallace E. Harden, <u>Pro se</u> Plaintiff, James T. Vaughn Correctional
Center, Smyrna, Delaware.

Stacey X. Stewart, Esquire, Deputy Attorney General, Delaware
Department of Justice.  Attorney for Defendants.

**MEMORANDUM OPINION**

September \[15\] , 2009
Wilmington, Delaware

**Farnan, District Judge**

Plaintiff Wallace E. Harden ("Plaintiff"), an inmate currently incarcerated at the James T. Vaughn Correctional Center ("VCC") filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging retaliation for the exercise of his First Amendment rights. Plaintiff proceeds pro se and has been granted leave to proceed in forma pauperis. Presently before the Court is Defendants' Motion For Summary Judgment. (D.I. 43.) For the reasons discussed below, the Court will grant the Motion For Summary Judgment.

## I. BACKGROUND

The following facts are taken from the Complaint and other documents and exhibits submitted by the parties. The Court dismissed several Defendants and claims following its initial screening of the Complaint. (D.I. 16, 17.) The remaining Defendants are M. Knight ("Knight") and C. Kline[1] ("Klein") Plaintiff alleges that he was fired from his food service job by Knight and Klein for speaking out against what he perceived to be harassment by Sgt. Phyllis Helper, a VCC kitchen employee, and for filing grievances to correct the perceived wrong.

Plaintiff began working in the kitchen of the VCC in 2000 as

---

[1]Christopher Klein is incorrectly named as C. Kline.

1

a relief worker. (D.I. 44, ex. A-3.) He worked with Helper. (Id. at ex. C at 40.) There was tension between the two, and Plaintiff believed that it might have created problems in the kitchen. (Id. at 55.) Helper suspended Plaintiff for three weeks when he entered the kitchen office and removed a hairnet without permission. (Id. at ex. C at 44.) Upon his return to work, at the end of the day he discovered that someone had placed a bag full of sugar in his coat pocket. (Id. at 52-54.) Plaintiff suspected Helper and on November 1, 2003, wrote a letter of complaint to Sgt. Friss or Sgt. Young. (D.I. 44, ex. D.) Plaintiff testified that he did not know if it was Helper or other inmates in the kitchen who had placed the sugar in his pocket. (D.I. 44, ex. C at 54.) On December 23, 2003, Plaintiff wrote a letter to Internal Affairs and complained about Helper and other correction officers in the kitchen.² (D.I. 44, ex. A-2.)

Knight was the VCC Food Service Director from 2000 to 2004. D.I. 44, ex. A.) He is currently the Department of Correction ("DOC") Food Services Administrator. (Id.) On January 6, 2004, he was contacted by Kathy English ("English"), Deputy Bureau

---

²On January 22, 2004, Plaintiff was advised by the director of the Internal Affairs Unit that he found no cause for an investigation. (D.I. 3, ex. A-4.)

Chief for the Bureau of Management Services, regarding a food
services issue as a result of the letter Plaintiff sent to
Internal Affairs.  (Id.)  Knight investigated Plaintiff's
complaints.  He reviewed Plaintiff's employment file, spoke with
the staff involved and assigned to the kitchen, and reviewed
Plaintiff's letters.  (D.I. 44, ex. A.)  Knight's investigation
revealed that Plaintiff was having problems with kitchen staff
and with authority in general.  (Id.)  Knight learned that
Plaintiff had exhibited odd behavior and had alleged that the
staff "was out to get him."  (Id.)  As a result of his
investigation, Knight determined that Plaintiff's allegations and
feelings of paranoia were unfounded.  (Id.)  Knight medically
terminated Plaintiff's employment on January 14, 2004, and
requested that Plaintiff undergo a mental health evaluation.
(D.I. 3, ex. B-1, D.I. 44, ex. A.)  Knight informed English that
once he received the evaluation he would make a final decision.
(Id. at ex. A-3.)

Plaintiff testified that he was placed on sick leave pending
the psychological evaluation.  (D.I. 44, ex. C at 57-58.)
According to Plaintiff, the evaluation did not take place for
three months.  (Id. at 58.)  The record reflects that the mental
health evaluation took place in March of 2004.  (Id. at exs. A,
B.)  Plaintiff testified that after his evaluation he was told

3

he was fine and could return to work. (Id. at ex. C at 59.)  He
reported to work and was told that he could not return to work
until receipt of the evaluation report. (Id.)  At that point,
Plaintiff submitted a grievance. (Id.)

Prior to receiving the evaluation report, Knight left his
position as Food Services Director to become the Food Services
Administrator. (Id. at ex. A.)  Knight was replaced by Klein.
(Id. at ex. B.)  In May 2004, Knight was forwarded a letter that
Plaintiff had sent to the DOC Commissioner on May 5, 2004,
requesting the return to his kitchen job. (D.I. 3, ex. C-2, D.I.
44 exs. A, B.)  Knight asked Klein to respond to Plaintiff and
they discussed Knight's previous findings. (D.I. 44, exs. A, B.)
Klein also gathered relevant information and met with Plaintiff.
(D.I. 44, ex. B.)  Klein explained to Plaintiff that his removal
from the kitchen was not disciplinary. (Id.)  During the
meeting, Plaintiff indicated that he continued to have problems
with certain food services officers. (Id.)  Plaintiff felt that
they, as well as other inmate workers, were out to get him.
(Id.)

On June 1, 2004, Klein received a summary of Plaintiff's
mental health evaluation. (Id. at ex. B.)  It noted that
Plaintiff has difficulty accepting authority and should be
subjected to the standard institutional disciplinary process.

4

(Id. at exs. B, B-1.) Based upon the totality of information he received, Klein decided not to return Plaintiff to the workplace. (Id.) Klein concluded that his decision would avoid potential and unnecessary disruptions and potential disciplinary actions involving Plaintiff. (Id.) Klein provided Plaintiff with his written decision on June 8, 2004. (Id. at exs. B, B-2.)

According to Knight, he made the decision to remove Plaintiff from his kitchen job because of his ongoing problems with kitchen staff, rule violations, and problems with authority. (D.I. 44, ex. A.) Both Knight and Klein state that Plaintiff's actions presented legitimate concerns for the effective and secure operation of the kitchen. (Id. at exs. A, B.) Knight made his decision to avoid conflicts and in an effort to maintain security and order in the kitchen. (Id. at ex. A.)

## II.  **STANDARD OF LAW**

The Court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

586 n.10 (1986).

When determining whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Federal Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted).

If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

**III. DISCUSSION**

Plaintiff alleges that Defendants retaliated against for exercising his First Amendment rights. Defendants move for

6

summary judgment on the grounds that Klein had no personal involvement in the decision to remove Plaintiff from the kitchen position; Plaintiff cannot establish a First Amendment retaliation claim against Defendants; Defendants are immune from liability; and Plaintiff has not alleged a valid claim for damages or relief. (D.I. 44.)

Plaintiff opposes the Motion on the grounds that he was not represented by counsel during his deposition, and he has the equivalent of a fourth grade education. (D.I. 52.) Plaintiff argues that allowing his deposition to proceed without legal representation was "the same as the Christians of Roman times being lead into the coliseum; certain death was inevitable." (Id.)

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under § 1983." White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990). It has long been established that the First Amendment bars retaliation for protected speech. See Crawford-El v. Britton, 523 U.S. 574, 592 (1998); Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981). To succeed on a First Amendment retaliation claim, an inmate plaintiff must prove that: (1) "the conduct which led to the alleged retaliation was constitutionally protected," Rauser v. Horn, 241 F.3d 330, 333

7

(3d Cir. 2001); (2) the inmate "suffered some adverse action at
the hands of the prison officials," which requires demonstration
that the adverse action "was sufficient to deter a person of
ordinary firmness from exercising his constitutional rights," id.
(quotation marks omitted); and (3) there is "a causal link
between the exercise of his constitutional rights and the adverse
action taken against him." Id. (quoting Mount Healthy Bd. of
Educ. v. Doyle, 429 U.S. 274, 287 (1977). The United States
Court of Appeals for The Third Circuit has incorporated the
burden-shifting framework first set forth in Mount Healthy into
the prison context. Mincy v. Klem, 277 F. App'x 239, 243 (3d.
Cir. 2008) (not published). In order to show a causal link, the
prisoner plaintiff bears "the initial burden of proving that his
constitutionally protected conduct was 'a substantial or
motivating factor' in the decision to discipline him."  Id.
(citations omitted). If the initial burden is met, the "burden
then shift[s] to the defendant to prove by a preponderance of the
evidence that it would have taken the same disciplinary action
even in the absence of the protected activity." Id. (citations
omitted).

Even assuming that Plaintiff could satisfy the first and
second prongs of the test as elucidated in Rauser, his claims
fail under the Mount Healthy burden-shifting test. Defendants

8

presented facts that Plaintiff was removed from his kitchen position because of legitimate penological interests. It is undisputed that Plaintiff refused orders, had problems with staff, believed that the staff and inmates were "out to get him" and had difficulty accepting authority. Both Knight and Klein stated that Plaintiff's actions presented legitimate concerns for the effective and secure operation of the kitchen. Finally, Knight, who made the decision to remove Plaintiff from his kitchen position, did so to avoid conflicts and to maintain security and order in the kitchen.

Defendants have established a legitimate penological purpose for their actions. Based upon the record, a reasonable jury could not find that Plaintiff was a victim of retaliation based upon the exercise of his First Amendment rights. Accordingly, the Court will grant Defendants' Motion For Summary Judgment.[3] (D.I.43.)

## IV. CONCLUSION

For the above reasons, the Court will grant Defendants' Motion For Summary Judgment.

An appropriate Order will be entered.

_____

[3]Inasmuch as the Court concludes that Defendants did not violate Plaintiff's constitutional rights, the Court will not address Defendants' other grounds for summary judgment.